

**U.S. Department of Justice**

Antitrust Division

*New York Office*

*26 Federal Plaza*
*Room 3630*
*New York, New York 10278-0004*

*212/335-8035*
*FAX 212/335-8023*

May 1, 2019

United States District Court
District of Connecticut
FILED AT BRIDGEPORT
5/1/19 20
By Robin D. Tabora, Clerk
Deputy Clerk

Stephan Seeger, Esq.
Law Offices SJ Carriero, LLC
810 Bedford Street Suite #3
Stamford, CT. 06901

Re: United States v. Michael S. Flynn
Case No. 3:19CR 112 (KAD)

Dear Attorney Seeger:

This letter confirms the plea agreement between your client, Michael S. Flynn (the "defendant"), and the United States Department of Justice Antitrust Division and the United States Attorney's Office for the District of Connecticut (the "Government") concerning the referenced criminal matter.

**THE PLEA AND OFFENSE**

In consideration for the benefits offered under this agreement, the defendant agrees to waive his right to be indicted and agrees to plead guilty to a two-count Information, which charges him with: (i) one count of violating 15 U.S.C. § 1 (Conspiracy to Restrain Trade) and (ii) one count of violating 18 U.S.C. § 1349 (Conspiracy to Commit Wire Fraud).

*15 U.S.C. § 1 (Conspiracy to Restrain Trade)*: With respect to Count One, the defendant understands that, to be guilty of this offense, the following essential elements must be satisfied:

1. There was a combination or conspiracy to restrain trade during the time alleged in the Information;
2. The defendant knowingly joined the conspiracy; and
3. The activity was within the flow of or substantially affected interstate or foreign commerce.

*18 U.S.C. § 1349 (Conspiracy to Commit Wire Fraud)*: With respect to Count Two, the defendant understands that, to be guilty of this offense, the following essential elements must be satisfied:

1. On or about the dates charged in the Information, a conspiracy existed to commit wire fraud; and
2. The defendant knowingly and intentionally became a member of that conspiracy.

**THE PENALTIES**

Imprisonment

Conspiracy to restrain trade under 15 U.S.C. § 1 carries a maximum penalty of 10 years of imprisonment.

Conspiracy to commit wire fraud under 18 U.S.C. § 1349 carries a maximum penalty of 20 years of imprisonment.

Supervised Release

In addition, with respect to both Count One and Count Two, the Court may impose a term of supervised release of not more than 3 years to begin after any term of imprisonment. 18 U.S.C. § 3583. The defendant understands that, should he violate any condition of supervised release, he may be required to serve a further term of imprisonment of up to 2 years pursuant to 18 U.S.C. § 3583 with no credit for time already spent on supervised release.

Fine

Count One carries a maximum fine of $1 million. The defendant is also subject to the alternative fine provision of 18 U.S.C. § 3571. Under this section, the maximum fine that may be imposed on the defendant is the greatest of the following amounts: (1) twice the gross gain to the defendant resulting from the offense; (2) twice the gross loss resulting from the offense, which is approximately $9 million; or (3) $1 million.

Count Two carries a maximum fine of $250,000. The defendant is also subject to the alternative fine provision of 18 U.S.C. § 3571. Under this section, the maximum fine that may be imposed on the defendant is the greatest of the following amounts: (1) twice the gross gain to the defendant resulting from the offense; (2) twice the gross loss resulting from the offense, which is approximately $9 million; or (3) $250,000.

Special Assessment

In addition, the defendant is obligated by 18 U.S.C. § 3013 to pay a special assessment of $100 on each count of conviction, for a total of $200. The defendant agrees to pay the special assessment to the Clerk of the Court on the day the guilty plea is accepted.

Restitution

In addition to the other penalties provided by law, the Court must also order that the defendant make restitution under 18 U.S.C. § 3663A, and the Government reserves its right to seek restitution on behalf of victims consistent with the provisions of § 3663A. The scope and effect of the order of restitution are set forth in the attached Rider Concerning Restitution. Restitution is payable immediately unless otherwise ordered by the Court.

Regardless of restitution that may be ordered by the Court noted above, the defendant agrees to immediately pay restitution of at least $4,500,000, on a joint and several basis with his co-conspirators. The defendant agrees that 30 days prior to the date of sentencing, he will have $100,000 in liquid assets previously held in an escrow account controlled by his attorney, turned over to the Clerk of Court in anticipation of a criminal monetary imposition. The Government and the defendants agree to recommend to the Court that the funds in the escrow account be used only to satisfy any restitution first, and then any remainder to satisfy any fine that the defendant is sentenced to pay. The defendant acknowledges, however, that the Court may sentence him to pay fines and restitution totaling more than the amount in the escrow account. The Government and the defendant also agree that if the funds in the escrow account exceed the amount of fines and restitution the defendant is sentenced to pay, he will seek the Court's permission to return the remainder to him.

Interest, penalties and fines

Unless otherwise ordered, should the Court impose a fine or restitution of more than $2,500 as part of the sentence, interest will be charged on the unpaid balance of the fine or restitution not paid within 15 days after the judgment date. 18 U.S.C. § 3612(f). Other penalties and fines may be assessed on the unpaid balance of a fine or restitution pursuant to 18 U.S.C. § 3572(h), (i) and § 3612(g).

Forfeiture

1. *United States v. 28 South Ridge Rd, Ridgefield, Connecticut et al, 3:18CV547 (AWT)*

With respect to 28 South Ridge Rd, Ridgefield, Connecticut that is the subject of the civil action *United States v. 28 South Ridge Rd, Ridgefield, Connecticut et al, 3:18CV547 (AWT),* (the "Real Property") the defendant and the United States hereby stipulate and agree as follows: That the defendant shall execute a Stipulation for Compromise Settlement, Forfeiture and Release of Property and shall cause to be delivered to and received by the United States Marshals Service, within 30 days of the date of this plea agreement's being entered in U.S. District Court, and at least 30 days prior to sentencing, a certified or cashier's check in the total amount of $327,500, payable to "United States of America" (hereinafter, the "$327,500 settlement amount"). Upon its timely delivery, the parties agree that the $327,500 settlement amount shall be substituted as the forfeitable res, in place of the Real Property.

That upon the timely delivery to the United States of the $327,500 settlement amount, the United States's forfeitable interest in the Real Property shall be extinguished and the United States shall promptly cause the release of its notice of *lis pendens* on the land records with respect to said property.

That upon the timely delivery to the United States of the $327,500 settlement amount, the defendant shall, pursuant to 18 U.S.C. § 981(a)(1)(A) and (C), and based on his commission of conspiracy to commit wire fraud charged in Count Two of the Information, agree to forfeit all interests in the $327,500 settlement amount.

That the defendant will agree to any continuance of the sentencing date needed to give enough time, after the 30-day deadline for conveying the $327,500 settlement amount, to allow the United States to draft and file prior to the defendant's sentencing, any Motion for Decree of Forfeiture or other legal process that may be required in this case.

That if the defendant fails to convey the $327,500 settlement amount to the United States within 30 days of the date of this plea agreement's being entered in U.S. District Court, then: (1) this section of the plea agreement regarding the Real Property shall be null and void, except for the immediately preceding paragraph, which shall continue to be binding upon the parties; (2) the United States shall not accept a $327,500 settlement amount; (3) the United States shall retain the right to forfeit the Real Property in its entirety, and to exercise all lawful means to secure said property and to complete the forfeiture of said property; and (4) pursuant to 18 U.S.C. § 981(a)(1)(A) and (C), and based on his commission of the conspiracy to commit wire fraud charged in Count Two of the Information, the defendant shall agree to forfeit all interests in the Real Property.

2. *United States v. Contents of Account Ending 4316 Held in the Name of B.C. Flynn Contracting Corp at JP Morgan Chase Bank et al.*, 3:*18MC29* (SALM)

Pursuant to 18 U.S.C. § 981(a)(1)(A) and (C), and based on his commission of the conspiracy to commit wire fraud charged in Count Two of the Information, the defendant agrees to forfeit in the civil forfeiture case to be filed, all interests in the contents of the account ending in 8741 held in the names Michael Flynn and Maria Flynn at Bank of America and account ending 3432 held in the name of Michael Flynn at TD Ameritrade (hereinafter, the "Forfeitable Assets"), and to execute a Stipulated Forfeiture Agreement to effectuate the forfeiture.

3. General terms applicable to all forfeitures agreed to herein

The defendant agrees to waive all interests in (1) the $327,500 settlement amount, or if said amount is not timely conveyed to the United States pursuant to the terms herein, the Real Property, and (2) the Forfeitable Assets, in any administrative or judicial forfeiture proceeding, whether criminal or civil, state or federal. The defendant agrees to consent to the entry of orders of forfeiture for all of the above-described assets that are to be forfeited, and waives the requirements of Federal Rules of Criminal Procedure 32.2 and 43(a) regarding notice of the forfeiture in the charging instrument, announcement of the forfeiture at sentencing, and incorporation of the forfeiture in the judgment. The defendant acknowledges that he understands that the forfeiture of assets is part of the sentence that may be imposed in this case and waives any failure by the Court to advise him of this, pursuant to Federal Rule of Criminal Procedure 11(b)(1)(J), at the time his guilty plea is accepted.

The defendant agrees to hold the United States, the Federal Bureau of Investigation, Department of Justice, Antitrust Division, the Department of Defense – Office of Inspector General, and their agents and employees harmless from any claims whatsoever in connection with the seizure, detention, and forfeiture of the above-listed assets covered by this agreement, and from any claims whatsoever in connection with the seizure, restraint, release, notice of *lis pendens*, release of *lis pendens*, and any other action taken or encumbrance imposed upon the Real Property.

The defendant further agrees to waive all constitutional and statutory challenges in any manner (including direct appeal, habeas corpus, or any other means) to any forfeiture carried out in accordance with this plea agreement on any grounds, including that the forfeiture constitutes an excessive fine or punishment. The defendant also understands and agrees that by virtue of his plea of guilty he waives any rights or cause of action to claim that he is a "substantially prevailing party" for the purpose of recovery of attorney fees and other litigation costs in any related forfeiture proceeding pursuant to 28 U.S.C. § 2465(b)(1).

**THE SENTENCING GUIDELINES**

Applicability

The defendant understands that the Court is required to consider any applicable Sentencing Guidelines as well as other factors enumerated in 18 U.S.C. § 3553(a) to tailor an appropriate sentence in this case and is not bound by this plea agreement. The defendant agrees that the Sentencing Guideline determinations will be made by the Court, by a preponderance of the evidence, based upon input from the defendant, the Government, and the United States Probation Office. The defendant further understands that he has no right to withdraw his guilty plea if his sentence or the Guideline application is other than he anticipated, including if the sentence is outside any of the ranges set forth in this agreement.

Acceptance of Responsibility

At this time, the Government agrees to recommend that the Court reduce by two levels the defendant's adjusted offense level under § 3E1.1(a) of the Sentencing Guidelines, based on the defendant's prompt recognition and affirmative acceptance of personal responsibility for the offense. Moreover, should the defendant qualify for a decrease under § 3E1.1(a) and his offense level determined prior to the operation of subsection (a) is level 16 or greater, the Government will file a motion with the Court pursuant to § 3E1.1(b) which recommends that the Court reduce the defendant's Adjusted Offense Level by one additional level based on his prompt notification of his intention to enter a plea of guilty. The defendant understands that the Court is not obligated to accept the Government's recommendations on the reductions.

The above-listed recommendations are conditioned upon the defendant's affirmative demonstration of acceptance of responsibility, by (1) truthfully admitting the conduct comprising the offense(s) of conviction and truthfully admitting or not falsely denying any additional relevant conduct for which the defendant is accountable under § 1B1.3 of the Sentencing Guidelines, and (2) disclosing to the United States Attorney's Office and the United States Probation Office a complete and truthful financial statement detailing the defendant's financial condition. The defendant expressly authorizes the United States Attorney's Office to obtain a credit report concerning the defendant.

In addition, the Government expressly reserves the right to seek denial of the adjustment for acceptance of responsibility if the defendant engages in any acts, unknown to the Government at the time of the signing of this agreement, which (1) indicate that the defendant has not terminated or withdrawn from criminal conduct or associations (§ 3E1.1 of the Sentencing Guidelines); (2) could provide a basis for an adjustment for obstructing or impeding the administration of justice (§ 3C1.1 of the Sentencing Guidelines); or (3) constitute a violation of any condition of release. Moreover, the Government reserves the right to seek denial of the adjustment for acceptance of responsibility if the defendant seeks to withdraw his guilty plea or takes a position at sentencing, or otherwise, which, in the Government's assessment, is

inconsistent with affirmative acceptance of personal responsibility. The defendant understands that he may not withdraw his plea of guilty if, for the reasons explained above, the Government does not make one or both of the recommendations or seeks denial of the adjustment for acceptance of responsibility.

Stipulation

Pursuant to § 6B1.4 of the Sentencing Guidelines, the defendant and the Government have entered into the attached stipulation, which is a part of this plea agreement. The defendant understands that this stipulation does not set forth all of the relevant conduct and characteristics that may be considered by the Court for purposes of sentencing. The defendant understands that this stipulation is not binding on the Court. The defendant also understands that the Government and the United States Probation Office are obligated to advise the Court of any additional relevant facts that subsequently come to their attention.

Guideline Stipulation

The parties agree as follows:

The Guidelines Manual in effect on the date of sentencing is used to determine the applicable Guidelines range.

The parties agree that Counts One and Two are grouped under U.S.S.G. § 3D1.2(a). The defendant's base offense level under U.S.S.G. § 2B1.1(a)(1) is 7. That level is increased by 18 levels under U.S.S.G. § 2B1.1(b)(1)(J) because the agreed-upon loss is over $3,500,000 but less than $9,500,000. That level is further increased by 2 levels under U.S.S.G. § 2B1.1(b)(10) because the offense otherwise involved sophisticated means and the defendant intentionally engaged in or caused the conduct constituting sophisticated means. That level is further increased by 2 levels under U.S.S.G. § 3B1.1(c) because the defendant was an organizer or leader in the criminal activity. Three levels are subtracted under U.S.S.G. § 3E1.1 for acceptance of responsibility, as noted above, resulting in a total offense level of 26.

Based on an initial assessment, the parties agree that the defendant falls within Criminal History Category I. The parties reserve the right to recalculate the defendant's Criminal History Category and corresponding sentencing ranges if this initial assessment proves inaccurate.

A total offense level 26, assuming a Criminal History Category I, would result in a range of 63 to 78 months of imprisonment (sentencing table) and a fine range of $25,000 to $250,000, U.S.S.G. § 5E1.2(c)(3). The defendant is also subject to a supervised release term of 1 years to 3 years. U.S.S.G. § 5D1.2.

The Government and the defendant reserve their rights to seek a departure or a non-Guidelines sentence, and both sides reserve their right to object to a departure or a non-Guidelines sentence.

The defendant understands that the Court is not bound by this agreement on the Guideline ranges specified above. The defendant further understands that he will not be permitted to withdraw the guilty plea if the Court imposes a sentence outside any of the ranges set forth in this agreement.

In the event the United States Probation Office or the Court contemplates any sentencing calculations different from those stipulated by the parties, the parties reserve the right to respond to any inquiries and make appropriate legal arguments regarding the proposed alternate calculations. Moreover, the parties reserve the right to defend any sentencing determination, even if it differs from that stipulated by the parties, in any post-sentencing proceeding.

Information to the Court

The Government reserves its right to address the Court with respect to an appropriate sentence to be imposed in this case. Moreover, the Government will discuss the facts of this case, including information regarding the defendant's background and character, 18 U.S.C. § 3661, with the United States Probation Office and will provide the Probation Officer with access to material in its file, with the exception of grand jury material.

**WAIVER OF RIGHTS**

The defendant acknowledges and agrees that he is knowingly, intelligently, and voluntarily waiving the following rights:

Waiver of Right to Indictment

The defendant understands that he has the right to have the facts of this case presented to a federal grand jury, consisting of between sixteen and twenty-three citizens, twelve of whom would have to find probable cause to believe that he committed the offense set forth in the information before an indictment could be returned. The defendant acknowledges that he is waiving his right to be indicted.

Waiver of Trial Rights and Consequences of Guilty Plea

The defendant understands that he has the right to be represented by an attorney at every stage of the proceeding and, if necessary, one will be appointed to represent him.

The defendant understands that he has the right to plead not guilty or to persist in that plea if it has already been made, the right to a public trial, the right to be tried by a jury with the assistance of counsel, the right to confront and cross-examine the witnesses against him, the right not to be compelled to incriminate himself, the right to testify and present evidence, and the right to compel the attendance of witnesses to testify in his defense. The defendant understands that by pleading guilty he waives those rights and that, if the plea of guilty is accepted by the Court, there will not be a trial of any kind.

The defendant understands that, if he pleads guilty, the Court may ask him questions about each offense to which he pleads guilty, and if he answers those questions falsely under oath, on the record, and in the presence of counsel, his answers may later be used against him in a prosecution for perjury or making false statements.

Waiver of Statute of Limitations

The defendant agrees that, should the conviction following defendant's guilty plea be vacated for any reason, then any prosecution that is not time-barred by the applicable statute of limitations on the date of the signing of this plea agreement (including any indictment or counts the Government has agreed to dismiss at sentencing pursuant to this plea agreement) may be commenced or reinstated against the defendant, notwithstanding the expiration of the statute of limitations between the signing of this plea agreement and the commencement or reinstatement of such prosecution. The defendant agrees to waive all defenses based on the statute of limitations with respect to any prosecution that is not time-barred on the date the plea agreement is signed.

Waiver of Right to Challenge Conviction

The defendant acknowledges that under certain circumstances he is entitled to challenge his conviction. By pleading guilty, the defendant waives his right to appeal or collaterally attack his conviction in any proceeding, including but not limited to a motion under 28 U.S.C. § 2255 and/or § 2241. In addition to any other claims he might raise, the defendant waives his right to challenge his conviction based on (1) any non-jurisdictional defects in the proceedings before entry of this plea, (2) a claim that the statute(s) to which the defendant is pleading guilty is unconstitutional, and (3) a claim that the admitted conduct does not fall within the scope of the statute. This waiver does not preclude the defendant from raising a claim of ineffective assistance of counsel in an appropriate forum.

Waiver of Right to Appeal or Collaterally Attack Sentence

The defendant acknowledges that under certain circumstances, he is entitled to challenge his sentence. In consideration for the benefits offered under this agreement, the defendant agrees not to appeal or collaterally attack the sentence in any proceeding, including but not limited to a motion under 28 U.S.C. § 2255 and/or § 2241 if that sentence does not exceed 78 months'

imprisonment, a 3-year term of supervised release, a $200 special assessment, a $250,000 fine, a $4,500,000 order of restitution, and forfeiture of the assets and in the amounts described in pages 4 and 5 above. The Government and the defendant agree that this waiver applies regardless of whether the term of imprisonment is imposed to run consecutively to or concurrently with, in whole or in part, the undischarged portion of any other sentence that has been imposed on the defendant at the time of sentencing in this case. Furthermore, the parties agree that any challenge to the defendant's sentence that is not foreclosed by this provision will be limited to that portion of the sentencing calculation that is inconsistent with (or not addressed by) this waiver. This waiver does not preclude the defendant from raising a claim of ineffective assistance of counsel in an appropriate forum.

Waiver of Challenge to Plea Based on Immigration Consequences

The defendant understands that pleading guilty may have consequences with respect to his immigration status if he is not a citizen of the United States. Under federal law, non-citizens are subject to removal for a broad range of crimes, including the offense(s) to which the defendant is pleading guilty. Likewise, if the defendant is a naturalized citizen of the United States, pleading guilty may result in denaturalization and removal. Removal, denaturalization, and other immigration consequences are the subject of a separate proceeding, however, and the defendant understands that no one, including his attorney or the district court, can predict to a certainty the effect of his conviction on his immigration status. The defendant nevertheless affirms that he wants to plead guilty regardless of any immigration consequences that his plea may entail, even if the consequence is automatic removal from the United States.

The defendant understands that he is bound by his guilty plea regardless of the immigration consequences of the plea and regardless of any advice the defendant has received from his counsel or others regarding those consequences. Accordingly, the defendant waives any and all challenges to his guilty plea and to his sentence based on those consequences, and agrees not to seek to withdraw his guilty plea, or to file a direct appeal or any kind of collateral attack challenging his guilty plea, conviction or sentence, based on the immigration consequences of his guilty plea, conviction or sentence.

**ACKNOWLEDGMENT OF GUILT AND VOLUNTARINESS OF PLEA**

The defendant acknowledges that he is entering into this agreement and is pleading guilty freely and voluntarily because he is guilty. The defendant further acknowledges that he is entering into this agreement without reliance upon any discussions between the Government and him (other than those described in the plea agreement letter), without promise of benefit of any kind (other than the concessions contained in the plea agreement letter), and without threats, force, intimidation, or coercion of any kind. The defendant further acknowledges his understanding of the nature of the offense to which he is pleading guilty, including the penalties provided by law. The defendant also acknowledges his complete satisfaction with the representation and advice received from his undersigned attorney. The defendant and his

undersigned counsel are unaware of any conflict of interest concerning counsel's representation of the defendant in the case.

## SCOPE OF THE AGREEMENT

The defendant acknowledges that this agreement is limited to the undersigned parties and cannot bind any other federal authority, or any state or local authority. The defendant acknowledges that no representations have been made to him with respect to any civil or administrative consequences that may result from this plea of guilty because such matters are solely within the province and discretion of the specific administrative or governmental entity involved. Finally, the defendant acknowledges that this agreement has been reached without regard to any civil tax matters that may be pending or which may arise involving him.

## COLLATERAL CONSEQUENCES

The defendant understands that he will be adjudicated guilty of each offense to which he has pleaded guilty and will be deprived of certain rights, such as the right to hold public office, to serve on a jury, to possess firearms and ammunition, and in some states, the right to vote. Further, the defendant understands that if he is not a citizen of the United States, a plea of guilty may result in removal from the United States, denial of citizenship, and denial of admission to the United States in the future. The defendant understands that pursuant to § 203(b) of the Justice For All Act, the Federal Bureau of Prisons or the United States Probation Office will collect a DNA sample from the defendant for analysis and indexing. Finally, the defendant understands that the Government reserves the right to notify any state or federal agency by which he is licensed, or with which he does business, as well as any current or future employer of the fact of his conviction.

## SATISFACTION OF FEDERAL CRIMINAL LIABILITY; BREACH

The defendant's guilty plea, if accepted by the Court, will satisfy the federal criminal liability of the defendant in the District of Connecticut as a result of his participation in schemes to rig bids and engage in fraud relating to insulation contracts in Connecticut, New York and Massachusetts, which forms the basis of the Information in this case.

The defendant understands that if, before sentencing, he violates any term or condition of this agreement, engages in any criminal activity, or fails to appear for sentencing, the Government may void all or part of this agreement. If the agreement is voided in whole or in part, the defendant will not be permitted to withdraw his guilty plea.

**NO OTHER PROMISES**

The defendant acknowledges that no other promises, agreements, or conditions have been entered into other than those set forth in this plea agreement, and none will be entered into unless set forth in writing, signed by all the parties.

This letter shall be presented to the Court, in open court, and filed in this case.

Very truly yours,

HELEN CHRISTODOULOU
MILOSZ GUDZOWSKI
TRIAL ATTORNEYS
U.S. DEPARTMENT OF JUSTICE
ANTITRUST DIVISION

DAVID T. HUANG
ASSISTANT UNITED STATES ATTORNEY
DISTRICT OF CONNECTICUT

The defendant certifies that he has read this plea agreement letter and its attachment(s) or has had it read or translated to him, that he has had ample time to discuss this agreement and its attachment(s) with counsel and that he fully understands and accepts its terms.

MICHAEL S. FLYNN
The Defendant

Date May 1/19

I have thoroughly read, reviewed and explained this plea agreement and its attachment(s) to my client who advises me that he understands and accepts its terms.

STEPHAN SEEGER, ESQ.
Attorney for the Defendant

Date May 1/19

**STIPULATION OF OFFENSE CONDUCT AND RELEVANT CONDUCT**

The defendant, Michael S. Flynn, and the Government stipulate to the following offense conduct and relevant conduct that give rise to the defendant's agreement to plead guilty to Counts One and Two of the Information:

1. Beginning at least as early as October 2011 and continuing until as late as March 2018, in the District of Connecticut and elsewhere, FLYNN knowingly entered into and engaged in a combination and conspiracy to suppress and eliminate competition by allocating customers, rigging bids, and fixing prices for insulation contracts in unreasonable restraint of interstate trade and commerce.
2. During this period, FLYNN was the owner and principal for a corporation ("CC-1") and had an active role in the bidding of insulation contracts.
3. During this period, FLYNN knowingly agreed with CC-2 through CC-7, whose identities are known to FLYNN and the Court, to share their respective bids and bid prices for the purpose of allocating insulation contracts among them at higher bid prices than if they had competed against each other. FLYNN and CC-1 through CC-7 shared bids and bid prices through various means including during meetings, through phone calls, and using email, faxes, text messages and the Confide messaging application. FLYNN and CC-1 through CC-7 submitted non-competitive bids. As a result of their agreement to collude, FLYNN and CC-1 through CC-7 provided insulation services pursuant to contracts that were awarded at collusive and noncompetitive prices.
4. The business activities that are the subject of Count One were within the flow of, and substantially affected, interstate trade and commerce.
5. During this period, in the District of Connecticut and elsewhere, FLYNN knowingly and willfully participated in a conspiracy to execute a scheme and artifice to defraud mechanical contractors, general contractors and/or project owners on at least $45 million in insulation projects for various entities, including universities, hospitals and other public and private entities who had solicited competitive bids that included insulation services.
6. The confidentiality and independence of the bids were essential to maintaining integrity and fairness during the bidding process, and in ensuring that customers receive the best value. In some cases, bidders were required to certify that they had not engaged in anticompetitive conduct (i.e., by signing certificates of non-collusion or independent pricing).
7. FLYNN, co-conspirators CC-1 through CC-7, and others sent, or caused to be sent, bids to mechanical and general contractors via emails and faxes from Connecticut to states outside of Connecticut, including Massachusetts and New York, that were a result of the agreement between and among them to provide collusive, non-competitive bid prices on insulation contracts.

8. FLYNN, co-conspirators CC-1 through CC-7, and others submitted collusive, non-competitive bids to mechanical and general contractors, via e-mail and fax, knowing that those contractors would be providing materially false certificates of non-collusion or independent pricing when those contractors in turn submitted their bids subject to requirements for competitive bidding.
9. FLYNN was an organizer or leader of the scheme in the charged conduct.
10. FLYNN and CC-2, CC-4 and CC-6 perpetrated the bid-rigging and fraud conduct using sophisticated means, including through the use of Confide, a disappearing text messaging app, and through the use of burner phones.
11. FLYNN and CC-1 through CC-7 inflated their bid prices by at least 10% as a result of their agreement to rig bids and engage in fraud.
12. The relevant and reasonably foreseeable loss attributable to FLYNN is at least $4,500,000.

This written stipulation is part of the plea agreement. The defendant and the Government reserve their right to present additional offense conduct and relevant conduct to the Court in connection with sentencing.

MICHAEL S. FLYNN
The Defendant

HELEN CHRISTODOULOU
MILOSZ GUDZOWSKI
TRIAL ATTORNEYS
U.S. DEPARTMENT OF JUSTICE
ANTITRUST DIVISION

DAVID T. HUANG
ASSISTANT UNITED STATES ATTORNEY
DISTRICT OF CONNECTICUT

STEPHAN SEEGER, ESQ.
Attorney for the Defendant

My 1/19
Date

**RIDER CONCERNING RESTITUTION**

The Court shall order that the defendant make restitution under 18 U.S.C. § 3663A as follows:

1. If the offense resulted in damage to or loss or destruction of property of a victim of the offense:

   A. Return the property to the owner of the property or someone designated by the owner; or

   B. If return of the property is impossible, impracticable, or inadequate, pay an amount equal to:
   The greater of -
   (I) the value of the property on the date of the damage, loss, or destruction; or

   (II) the value of the property on the date of sentencing, less the value as of the date the property is returned.

2. In the case of an offense resulting in bodily injury to a victim –

   A. Pay an amount equal to the costs of necessary medical and related professional services and devices related to physical, psychiatric, and psychological care; including non-medical care and treatment rendered in accordance with a method of healing recognized by the law of the place of treatment;

   B. Pay an amount equal to the cost of necessary physical and occupational therapy and rehabilitation; and

   C. Reimburse the victim for income lost by such victim as a result of such offense;

3. In the case of an offense resulting in bodily injury that results in the death of the victim, pay an amount equal to the cost of necessary funeral and related services; and

4. In any case, reimburse the victim for lost income and necessary child care, transportation, and other expenses incurred during participation in the investigation or prosecution of the offense or attendance at proceedings related to the offense.

The order of restitution has the effect of a civil judgment against the defendant. In addition to the Court-ordered restitution, the Court may order that the conditions of its order of restitution be made a condition of probation or supervised release. Failure to make restitution as ordered may result in a revocation of probation, 18 U.S.C. § 3565, or a modification of the conditions of supervised release, 18 U.S.C. § 3583(e). Failure to pay restitution may also result in the defendant being held in contempt, or the defendant's re-sentencing to any sentence which

might originally have been imposed by the Court. *See* 18 U.S.C. §§ 3613A, 3614. The Court may also order that the defendant give notice to any victim(s) of his offense under 18 U.S.C. § 3555.